# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARY V. TRITSIS, | ) |
| Plaintiff, | ) |
| | ) Case No. 16 C 02052 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| BANKFINANCIAL CORP., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mary V. Tritsis, filed a two-count First Amended Complaint, alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C § 1981a ("Title VII") and the Ledbetter Fair Pay Act, 42 U.S.C. § 2000e-5(e) [25]. Defendants, BankFinancial Corporation ("Corporation") and BankFinancial F.S.B. ("Bank") move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim . For the reasons set forth below, this Court grants in part and denies in part the motion.

**Background**

Plaintiff's two-count First Amended Complaint alleges employment discrimination and retaliation stemming from her employment as a Senior Vice President with defendant Bank. The complaint alleges that Tritsis began her employment around July 2003 and that she and the Bank have been parties to a written employment agreement dated May 6, 2008, that has been amended several times. The most recent amended to the employment agreement extends through March 31, 2016, and is attached as an exhibit to the complaint. (Dkt. 25-2, Exhibit 5).

Tritsis alleges that during her employment, she and other female executives were denied promotional opportunities, and Tritsis was denied stock options, that were provided to similarly situated male executives. Sometime in 2015, Tritsis learned that her employment agreement would

1

not be extended beyond March 31, 2016. Tritsis notified Chief Executive Officer, F. Morgan Gasior on August 31, 2015, that she believed the refusal to extend her employment was retaliatory and gender based. Bank offered to extend her employment agreement for an additional year, if she released her claims against it.

Tritsis filed a charge of discrimination against the Corporation on December 14, 2015, with the EEOC and received a Right to Sue letter. Tritsis filed the original complaint in this matter naming only the Corporation as a defendant. This Court granted the motion to dismiss the original complaint on June 30, 2016, finding that Tritsis did not adequately allege that that the Corporation was an employer within the meaning of Title VII and that the employment contract was between Tritsis and the Bank, not the Corporation. Tritsis filed a second EEOC charge on May 9, 2016, this one against the Bank, and received the Right to Sue letter shortly thereafter. This Court denied Tritsis leave to file her proposed Amended Complaint, which was defective for the reasons stated in Court on July 19, 2016, but granted Tritsis leave to file a First Amended Complaint. Tritsis filed the instant First Amended Complaint on July 21, 2016, naming both the Corporation and the Bank as defendants.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive dismissal, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

Defendants move to dismiss the complaint against the Corporation, arguing that the Corporation is not an "employer" within the meaning of Title VII because it lacks the minimum number of employees and it is not a "joint employer" with the Bank. Defendants move to dismiss the complaint against the Bank because claims are untimely.

*1. The Corporation*

The Court first considers whether Tritsis has adequately alleged that the Corporation is her employer. Title VII defines "employer" as: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person". 42 U.S.C. § 2000e(b). An "employee" is "an individual employed by an employer". 42. U.S.C. § 2000e(f). As this Court previously found, the employment agreement attached to the complaint is between plaintiff and the Bank, not the Corporation.

Defendants argue that Tritsis has not alleged facts to support a "joint employer" relationship. A "Title VII plaintiff might have *joint* employers." *Sklyarsky v. Means-Knaus Partners, LP*, 777 F.3d 892, 895 (7th Cir. 2015) (emphasis in original). "[A]n entity other than the actual employer may be considered a 'joint employer' only if it exerted significant control over the employee." *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 810 (7th Cir. 2014) (quoting *G. Heileman Brewing Co. v. NLRB*, 879 F.2d 1526, 1530 (7th Cir. 1989) (emphasis and internal quotation marks omitted)). "Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions."

*Whitaker*, 772 F.3d at 810 (quoting *DiMucci Constr. Co. v. NLRB*, 24 F.3d 949, 952 (7th Cir. 1994)). The Seventh Circuit has also held that multiple entities may be considered an employee's "employer" for the purposes of Title VII liability where an affiliated corporation "directed the discriminatory act, practice, or policy of which the employee is complaining." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008). The court in *Tamayo* explained that courts must look to the "economic realities" of the employment relationship as well as the degree of control. *Id.*

Here, Tritsis alleges that the Corporation exerted a significant degree of control over her because the Corporation determined her eligibility for stock options and the terms of the stock option plan. Dkt. 25 at ¶¶ 35-36. The awarding of stock options is also one of the alleged discriminatory acts. Defendants rely on *Clifford v. Patterson Companies, Inc.,* No. 08 C 828, 2009 WL 3852447, at *9-10 (N.D. Ill. Nov. 18, 2009)(Lefkow, J.), where the court found, albeit on summary judgment, that the defendant was not a proper party and should be dismissed because it was not a joint employer despite issuing the plaintiff's paychecks, awarding him company stock, and referring to him as an employee in its stock agreement. In that case, the awarding of stock options was only offered as evidence of a joint employer relationship. By contrast, here, Tritsis is alleging that the Corporation's stock options offer was itself retaliatory. Because the allegedly discriminatory conduct is the awarding of stock, it is tied to the degree of control in line with *Tamayo*. Accordingly, this Court finds that Tritsis has adequately alleged an employment relationship on that basis.

Tritsis' allegations that the Corporation materially influenced the awarding and renewal of employment contracts is belied by the exhibits attached to the First Amended Complaint. The fact that it was the Bank's decision whether to renew her contract is supported by the exhibits attached to the First Amended Complaint in which it is stated: "The Board of Directors of BankFinancial, F.S.B. (the 'Bank') and its Human Resources Committee have completed their annual review of your Employment Agreement with the Bank… and have determined to offer to amend your

4

Employment Agreement"; and "The Board of Directors of BankFinancial, F.S.B. (the 'Bank') and its Human Resources Committee have determined to offer to extend the term of the 'Employment Period'…". Dkt. 25-2, Ex. 5 at p. 2; Dkt. 25-3, Ex. 7 at p. 5. These exhibits thus render Tritsis' allegation that the Corporation directed the Bank not to renew her employment contract unsupported speculation. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party.").

The Corporation also reasserts its argument that, with only six employees, it does not fall under the purview of Title VII, which only applies to employers with "15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *See* 42 U.S.C. § 2000e(b). Tritsis does not dispute that the Corporation by itself does not have the requisite number of employees to satisfy Title VII. Instead, she asserts that the number should be aggregated to meet the statutory minimum.

There are three scenarios where a court should aggregate the employees of separate companies for the purposes of defining "employer" under Title VII: (1) where the traditional conditions exist to "pierce the corporate veil;" (2) where the enterprise has split itself into separate companies with the express purpose of avoiding liability under Title VII; and (3) where the parent corporation may have directed the discriminatory act. *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 940-41 (7th Cir. 1999); *Wilson v. Comtrust L.L.C.*, 249 F. Supp. 2d 993, 997 (N.D. Ill. 2003). Tritsis asserts that the Corporation directed the discriminatory acts and therefore the number of employees should be aggregated. As discussed above, the Court finds this allegation adequately pleaded and will not permit the Corporation to escape liability at the pleading stage solely on the basis of number of employees.

*2. The Bank*

Defendants move to dismiss the Bank, arguing that it was not named in the original EEOC charge and therefore the claims against it are untimely. Title VII requires employees complaining of discrimination to file a charge with the EEOC as a condition precedent to the filing of a lawsuit. 42 U.S.C. § 2000e-5(e)(1). Employees then have 90 days from receiving a Right to Sue letter to file suit. 42 U.S.C. § 2000e-5(f)(1). Defendants argue that because Tritsis did not join the Bank until more than 90 days had passed from receiving her original Right to Sue letter and the second EEOC charge, the complaint against the Bank is untimely.

The situation at hand appears to be of the plaintiff's own making, having failed through inadvertence or ignorance to file the initial EEOC charge and original complaint against her actual employer. Instead, she brought this action against an affiliated, but separate entity, resulting in the subsequent need to amend her complaint and file a second EEOC charge. Neither party provides any authority of assistance to the Court on this particular issue. The cases relied upon by defendants are distinguishable in that the defendants in those cases were never named in an EEOC charge. *See, e.g., Bright v. Roadway Services, Inc.,* 846 F. Supp. 693, 697 (N.D. Ill. 1994). Plaintiff argues that nothing in Title VII requires a plaintiff to name all of her employers in the original EEOC charge so long as she files an EEOC charge against the employer prior to filing her lawsuit. While technically true, this argument ignores the purpose of having such time limitations and plaintiff does not refer to any court interpreting the statute in this manner.

Tritsis asserts that the second EEOC charge against the Bank contains "new, substantial allegations" such that the 90 day window to file suit would be reopened. On review, the second EEOC charge alleges all the same claims against the Bank as it did against the Corporation in the first EEOC charge, with the addition of the claim regarding waiver of her rights and the offer of stock options. Dkt. 25-1, Ex. 1 and 3. Ironically, the retaliatory stock options are the source of

6

Tritsis' claim against the Corporation, not against the Bank. Once again plaintiff's pursuit of this matter is deficient and the additional claim does not represent the kind of new allegation of discrimination that would allow this Court to consider a subsequent EEOC charge. *See Blalock v. Bethesda Lutheran Homes and Services, Inc.,* No. 01 C 9188, 2002 WL 31833693, at *3 (N.D. Ill. Dec. 16, 2002) (finding that the plaintiff "must demonstrate that her second EEOC charge is not a mere re-allegation of the first EEOC charge, *i.e.*, not reasonably related or similar enough to be within the scope of the first charge."). Here, the charges clearly stem from the same discriminatory conduct within related companies. Tritsis cannot persuasively argue that the Corporation and the Bank were her joint employers and acted in concert to discriminate against her, and argue that the EEOC charges are so different as to contain entirely new allegations of discrimination. Accordingly, this Court finds that the claim against the Bank is untimely.

**Conclusion**

The Court having found that the claim against the Bank is untimely grants the motion to dismiss the Bank. However, the Court having found that plaintiff adequately alleged an employment relationship against the Corporation and that the conditions exist to aggregate employees, the Court denies the motion to dismiss the Corporation. Based on the foregoing, this Court grants in part and denies in part defendants' Motion to Dismiss [30].

IT IS SO ORDERED.

Date: September 21, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge