# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARY V. TRITSIS, | )<br>) |
| Plaintiff, | )<br>) Case No. 16 C 02052 |
| v. | )<br>) Judge Sharon Johnson Coleman |
| BANKFINANCIAL CORP., | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mary V. Tritsis, filed a two-count Second Amended Complaint, alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C § 1981a ("Title VII") and the Ledbetter Fair Pay Act, 42 U.S.C. § 2000e-5(e) [49]. Defendant BankFinancial, National Association, f/k/a F.S.B. ("Bank") move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim and, alternatively, pursuant to Rule 12(b)(3) for lack of venue. For the reasons set forth below, this Court grants in part and denies in part the motion.

**Background**

The allegations in plaintiff's two-count Second Amended Complaint allege employment discrimination and retaliation stemming from her employment as a Senior Vice President with defendant Bank. The complaint alleges that Tritsis began her employment around July 2003 and that she and the Bank have been parties to a written employment agreement dated May 6, 2008, that has been amended several times. The most recent amendment to the employment agreement extends through March 31, 2016. The Second Amended Complaint alleges that the Bank has not offered Tritsis an employment agreement for the one-year term commencing April 1, 2017. (Dkt. 49, at ¶ 47). She alleges that other Bank executives, who did not complain of discrimination and retaliation,

were offered employment contract extensions in 2016. (Dkt. 49 at ¶ 48). The other allegations remain the same as her previous complaint.

This Court dismissed the original complaint on June 20, 2016, because Tritsis named only BankFinancial Corporation and not BankFinancial F.S.B. because the Corporation had never employed Tritsis and it did not have the requisite number of employees to be subject to Title VII. On September 21, 2016, this Court dismissed the First Amended Complaint because the 90-day period had expired and her second EEOC charge was simply a re-allegation of the discriminatory conduct in the first charge, and thus was also untimely, though it named the appropriate entity.

On October 19, 2016, Tritsis filed a third EEOC charge for sex discrimination and retaliation "continuing action," stating:

> BankFinancial F.S.B. has failed and refused to offer me a new employment contract for the period commencing April 1, 2017 because of my gender and because I have filed discrimination charges and a lawsuit against it and BankFinancial Corporation. BankFinancial Corporation and BankFinancial F.S.B. denied me stock options on the terms offered others, including on December 30, 2015.
>
> I believe that I have been discriminated against because of my sex, female, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. 49-1, Ex. 3.) Tritsis also attached her first EEOC charge from December 14, 2015, which states:

> I was hired by Respondent in or around July 2003. My most recent position is Senior Vice President. During the course of my employment, I have been denied promotion opportunities which similarly situated male employees have not. Further, I have been subjected to different terms and conditions of employment, including not being offered a contract extension which similarly situated male employees have. I complained to Respondent. Subsequently, I was offered a contract with a different compensation package.
>
> I believe that I have been discriminated against because of my sex, female, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. 49-1, Ex. 1).

2

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive dismissal, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

Defendant Bank moves to dismiss the Second Amended Complaint as untimely because the additional claim in the third EEOC charge is reasonably related to the prior claims, which this Court has already found were time-barred.

Title VII requires employees complaining of discrimination to file a charge with the EEOC as a condition precedent to the filing of a lawsuit. 42 U.S.C. § 2000e-5(e)(1). Employees have 90 days from receiving a Right to Sue letter to file suit. 42 U.S.C. § 2000e-5(f)(1). The Bank argues that because Tritsis did not join the Bank until more than 90 days had passed from receiving her original Right to Sue letter and the third EEOC charge does not salvage this claim, the Second Amended Complaint against the Bank is untimely.

In order to survive dismissal, the Second Amended Complaint must demonstrate that the third EEOC charge is not merely a re-allegation of the previous charge. *See Blalock v. Bethesda Lutheran Homes and Services, Inc.,* No. 01 C 9188, 2002 WL 31833693, at *3 (N.D. Ill. Dec. 16, 2002)

3

(finding that the plaintiff "must demonstrate that her second EEOC charge is not a mere re-allegation of the first EEOC charge, *i.e.*, not reasonably related or similar enough to be within the scope of the first charge.").

The Bank argues that the new claim that the Bank did not offer Tritsis a new employment contract beginning April 1, 2017, is not a fresh act of discrimination. Instead, the Bank asserts that this Court should interpret it as a refusal to undo a discriminatory decision, which is not a fresh act of discrimination sufficient to restart the 90-day clock. *See Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."). Without a case directly on point, this Court finds the Bank's position yields too harsh a result at the pleading stage.

Tritsis relies on *Freeman v. Travelers' Companies, Inc.*, 63 F.Supp.3d 867 (N.D. Ill. 2014) (Chang, J.), in support of her claim that the allegations in her third EEOC charge and Second Amended Complaint are timely. In that case, the district court found that Freeman's claim in her second charge that Travelers' engaged in an additional act of retaliation by interfering in her job search had not occurred when Freeman filed her first charge for retaliatory termination of employment. *Id.* at 873. "Thus, it cannot have been based on the same acts and was not a 'mere re-allegation' of the retaliation alleged in the original charge." *Id.* As the Supreme Court explained, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002). While the situation in *Freeman* involved more distinct claims (termination of employment and interference with a subsequent job search) than the claims here (sequential denial of a new employment contract or extension), it is conceivable that each refusal of a new term of a termed contract constitutes a separate unlawful employment

4

practice.

The Seventh Circuit's decision in *Webb v. Indiana National Bank*, 931 F.2d 434 (7th Cir. 1991), also provides some guidance. The *Webb* court, following *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), explained the difference between two *ad hoc* decisions and a permanent exclusion. In *Ricks,* the plaintiff's employment contract was not renewed after he was denied tenure, which the court considered to be a permanent exclusion. The court held that the plaintiff had no reasonable expectation that his contract would be renewed and thus his injury, and the statute of limitations, derived from the denial of tenure and not from the expiration of his employment contract. *Ricks*, 449 U.S. at 258. As the court in *Webb* explained, "[w]hen a worker is authoritatively informed that he will never be promoted, that decision is 'final' with respect to his promotions, and the statute of limitations begins to run." *Webb,* 931 F.2d at 437. Distinguishing *Ricks*, the court held that a person who applies for more than one job (a promotion) with the same employer, was declined twice, but filed a charge only after the second denial, was entitled to an opportunity to show that the second decision was independent of the first. *Webb,* 931 F.2d at 437.

It is unclear from the undeveloped record here whether Tritsis was authoritatively informed that her contract would never be extended or renewed. Accordingly, this Court is not inclined to deny her the opportunity to show that the decision not to offer her a contract beginning April 1, 2017, was independent of the prior decision not to offer her a contract extension.

The Bank alternatively moves for dismissal of the Second Amended Complaint for lack of venue based on the arbitration clause in the employment agreement. "[A] motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.,* 502 F.3d 740, 746 (7th Cir.2007)). Plaintiff bears the burden of establishing venue. *Johnson*

*v. Creighton Univ.*, 114 F. Supp. 3d 688, 696 (N.D. Ill. 2015).

It is undisputed that the employment agreement between the Bank and Tritsis contains an arbitration clause in which the parties agree to resolve employment related disputes through arbitration conducted by JAMS. Dkt. 49-2, Ex. 5. Tritsis argues that the arbitration clause is unenforceable because she would incur prohibitive arbitration costs and the Bank has waived arbitration by waiting to seek arbitration until now. The agreement provides that the costs and fees for arbitration are borne equally by the employee and the Bank "unless the arbitrator determines otherwise." Dkt. 49-2, Ex. 5 at 17. Tritsis argues that the hourly cost of arbitration can be between $500 and $900 and JAMS charges an additional case management fee equal to 12% of the arbitrator's fees. Tritsis argues that paying half of such fees would be a significant burden even in light of her $163,636.00 annual salary. There is certainly case law recognizing that large arbitration costs can be prohibitive for litigants and may be unenforceable. *See Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 90-92, 121 S. Ct. 513, 148 L.Ed.2d 373 (2000); *see also Phillips v. Associates Home Equity Services, Inc.*, 179 F.Supp.2d 840 (N.D. Ill. 2001).

Here, however, Tritsis ignores the additional language in the arbitration provision equally dividing the cost "unless the arbitrator determines otherwise." As Tritsis herself points out, Rule 31(c) of the JAMS Endispute Employment Arbitration Rules and Procedures limits an employee who is required to arbitrate as a condition of employment to paying only the *initial* Case Management Fee, which is usually approximately $1200. Dkt. 59-1, Ex. A at ¶ 6. This Court fails to see that payment of such a fee is so burdensome as to render the arbitration clause unenforceable. Tritsis' other argument that the Bank has waived the arbitration clause is also unavailing. "A party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue." *Faulkenberg*, 637 F.3d at 807 (quoting *Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 562 (7th Cir.2008)). Accordingly, this Court finds that arbitration under the clause in the

6

employment agreement is the appropriate avenue for resolution, and grants the Bank's motion on that issue.

**Conclusion**

Based on the foregoing, this Court denies the Bank's Motion to Dismiss [51] based on a failure to state a claim and grants the motion for lack of venue based on the arbitration clause.

IT IS SO ORDERED.

ENTERED:

Dated: March 27, 2017

_____
SHARON JOHNSON COLEMAN
United States District Judge